UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHELLE K. GLORIA,

                  Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

               Defendant.

CASE NO.     C08-5714RJB-KLS

REPORT AND
RECOMMENDATION

Noted for June 19, 2009

     Plaintiff, Michelle K. Gloria, has brought this matter for judicial review of the denial of her

applications for child's disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and

Local Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261

(1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the

following Report and Recommendation for the Court's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

     Plaintiff currently is 27 years old.[1] Tr. 40.  She completed formal education through the eighth

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

grade, later obtaining a general equivalency diploma, and has no past relevant work experience. Tr. 31, 55, 60, 63.

Plaintiff filed an application for SSI benefits on September 8, 2003, and an application for child's disability insurance benefits on December 4, 2003, alleging disability as of June 23, 1981, her date of birth, due to anemia and a mental disability. Tr. 25, 40, 51-52, 54, 242-45. Her applications were denied initially and on reconsideration. Tr. 25, 40-42, 46, 246-47, 251-52. A hearing was held before an administrative law judge ("ALJ") on December 5, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness, plaintiff's boyfriend, and a vocational expert. Tr. 260-309.

On March 19, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of a learning disorder and a cognitive disorder;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity to perform simple, repetitive unskilled work, requiring no more than three step instructions, and not performed at heights or around moving machinery;

(5) at step four, plaintiff had no past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 25-32. Plaintiff's request for review was denied by the Appeals Council on October 30, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981, § 416.1481.

On November 26, 2008, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). The administrative record was filed with the Court on February 20, 2009. (Dkt. #11). Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

(a)     the ALJ erred in finding plaintiff's depression to be not severe and in finding she did not have a severe physical impairment;

(b)     the ALJ erred in assessing plaintiff's credibility;

(c)     the ALJ erred in evaluating the lay witness evidence in the record;

(d)     the ALJ erred in assessing plaintiff's residual functional capacity; and

(e)     the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Step Two Analysis

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v.

Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

As noted above, the ALJ found plaintiff had severe impairments consisting a learning disorder and a cognitive disorder. Tr. 27. The ALJ also found plaintiff had no physical impairment, and determined her depression to be non-severe as well. Id. More specifically with respect to plaintiff's physical impairments, the ALJ stated in relevant part that:

> There are no objective clinical findings to support a severe left ankle impairment. There are gaps in the record as to the claimant's left ankle. The claimant's left ankle was noted on July 16, 1999, to be tender but was not evaluated further. Her left ankle was not mentioned again until the claimant was seen by Elizabeth J. Borrone, M.D., on March 4, 2004, for a disability evaluation. Dr. Borrone reported that the claimant had sprained her left ankle when she was 12 years old. However, on examination the claimant's gait was normal, reflexes were normal and all range of motion was normal (Exhibit 7F). A nurse practitioner reported on April 16, 2004, that when the claimant was recently walking, her left ankle rolled over and she had pain in the distal fibula area. On examination, the claimant was not in acute distress and her left ankle appeared normal, with no tenderness on palpation. She had no laxity in the joint (Exhibit 4F, page 4).
>
> There is no mention in the medical records (except for the consultative examination) of the claimant having symptoms of anemia and fainting or the cause. See Exhibit 4F. Dr. Borrone's reference to these problems was based solely on the claimant's self-reporting in the history (Exhibit 7F).
>
> There are no treatment records for the claimant's allegations of right shoulder problems. Dr. Borrone's mention of these is based solely on the claimant's history with no objective findings of problems (Exhibit 7F).

Tr. 28. Plaintiff argues the substantial evidence in the record supports a finding of severity concerning her physical impairments. The undersigned disagrees.

In stating the record supports her assertion that she has severe physical impairments, plaintiff first points to her own testimony and self-reports, in which she alleges: anemia, causing her (a) to faint several times without warning, and (b) become light headed with associated nausea and dizziness, resulting in her falling down; pain and ongoing weakness in her left ankle; back pain; and right shoulder inflammation that caused her to drop things. At step two of the sequential disability evaluation process, however, while the ALJ must take into account a claimant's pain and other symptoms (see 20 C.F.R. § 404.1529, § 416.929),

the severity determination is made solely on the basis of objective medical evidence:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. <u>At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.</u>  If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed.  Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA.

SSR 85-28, 1985 WL 56856 *4 (emphasis added).  That evidence, furthermore, supports the AL's findings concerning the non-severity of plaintiff's impairments in this case.

In mid-July 1999, "some tenderness" was noted in plaintiff's ankle, and she was diagnosed with a history of an ankle sprain. Tr. 184.  In early September 2003, plaintiff complained of having intermittent headaches. Tr. 168.  A physical examination of plaintiff at the time, however, was fairly unremarkable. <u>Id.</u> She was diagnosed with a history of iron deficiency anemia, fatigue and possible chronic sinus or tension headaches times one month. Tr. 167-68.  In mid-April 2004, plaintiff was seen for recent injury to her left ankle. Tr. 153.  Upon examination, though, her ankle appeared normal, with no tenderness or joint laxity. <u>Id.</u> She was diagnosed with a chronic ankle strain and a past ankle injury. <u>Id.</u>

Plaintiff was examined by Dr. Borrone in early March 2004, at which time plaintiff reported that her "shoulder problem" did "not impact her activities of daily living." Tr. 222.  She reported as well that despite her claimed left ankle problem, she had no difficulty with stairs and was able to "walk several city blocks" before it became "too sore" and she had to stop. <u>Id.</u>  Physical examination of plaintiff's back and upper and lower extremities were remarkably normal. Tr. 223.  Indeed, Dr. Borrone specifically noted that "[i]nterestingly, while she was describing the symptoms of her left ankle which is so difficult to walk on, she was constantly moving it back and forth and up and down." <u>Id.</u>  She further found plaintiff's ankle had "complete range of motion" without any pain, and no problems with either of her shoulders were noted as well. <u>Id.</u>

In terms of plaintiff's medical issues, Dr. Borrone concluded in relevant part as follows:

> . . . The right shoulder does not seem problematic, although she admits that she does not lift with it and it bothers her with stretching and pulling.  However, I saw no indication of that during the exam and she could fully flex, extend, abduct and adduct the shoulder joint.  She was very concerned about the ankle, and was always constantly

moving during the entire exam, moving it in all of its ranges of motion. She may need a brace, but she certainly does have high boots and these should be helpful. The thing she says she can not do because of this is running. Again, I am unsure of what really happened to it other than a severe sprain, and the x-ray showed no evidence of fracture. She may have a very loose joint. If this is true than a brace may be a correct solution.

Anemia has been tested and found true initially . . . and allegedly that has been treated and was normal at the last visit a month ago. . . .

Tr. 224. In regard to alleged disabilities, Dr. Borrone continued:

These are difficult to really pin down. All I can allege is what she has alleged herself.

One is severe left ankle sprain at age 12, which may render it unstable and easily rolled. However, her gait was normal, reflexes were normal, and all range of motion was normal. Wisely she is wearing high-top shoes to protect the ankle.

The next is back pain which occurred falling out of tree and landing on the right shoulder blade. It may well be inflamed and sore at times. I have real doubts that because of this she drops things. Although certainly she may have some stretching and pulling problems and is wise to limit things to 5 to 10 pounds of lifting.

Anemia, with possible hypotension is the next problem, which appears to have been treated and corrected.

With the excellent finger mobility and motility that she does have and normal movement of the elbows, wrists and digits. I do feel that she certainly could be employed in some type of position where she was using those upper extremities as long sa she did not have to lift heavy weights.

Id. Finally, in early July 2004, James Dunn, M.D., conducted a physical examination of plaintiff, which was essentially benign. Tr. 227-28.

Plaintiff points to Dr. Borrone's evaluation report, arguing that it contains the only medial opinion in the record regarding her physical impairments. As can be seen, however, this is not true. Other medical sources in the record, including Dr. Dunn, also examined plaintiff, some of whom diagnosed her with one or more physical impairments, but failed to find any significant limitations resulting therefrom. Plaintiff further argues the ALJ did not properly evaluate the five to ten pound lifting restriction Dr. Borrone found as well, based on problems she opined she would have with stretching and pulling related to her back pain. See Tr. 224. As noted above, though, the ALJ found no treatment records dealing with plaintiff's claimed right shoulder problems, and determined Dr. Borrone's mention of those problems to be "based solely on" plaintiff's "history with no objective findings" in support thereof provided. Tr. 28. The undersigned finds these are legitimate reasons for rejecting Dr. Borrone's lifting restriction.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u> The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u>

at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

First, it is true, as noted above, that there are no treatment records regarding plaintiff's alleged right shoulder problems. Second, also as noted above, Dr. Borrone's own objective findings fail to indicate the presence of any physical abnormalities, significant or otherwise, with respect to plaintiff's right shoulder, or upper extremities in general. Indeed, Dr. Borrone herself expressly stated that she had "real doubts" that plaintiff dropped things because of back pain allegedly caused by the claimed injury to her right shoulder blade. Tr. 224; <u>see</u> <u>Batson</u>, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician if it is inadequately supported by clinical findings).

In addition, again as noted above, Dr. Borrone stated that the only disabilities to which she could provide an opinion were those plaintiff herself had alleged. This fact was specifically noted by the ALJ, which is a valid basis for rejecting Dr. Borrone's opinion, given that, as discussed in greater detail below, the ALJ properly discounted plaintiff's credibility. <u>See</u> <u>Tonapetyan</u>, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted). Accordingly, the undersigned finds the substantial evidence in the record supports the ALJ's determination concerning the severity of plaintiff's physical impairments.

In regard to plaintiff's depression, the ALJ also found in relevant part that:

> Neither the state agency medical consultants nor the consultative examiner reported that the claimant had a diagnosis of depression (Exhibits 1F, 6F). . . . In the medical evidence of record, the claimant is usually mentioned as doing well on medication, with severe symptoms of depression rarely mentioned. Although the claimant was found to have chronic depression when seen on October 18, 2006, she noted that she had been doing much better on Zoloft (Exhibit 11F).

Tr. 28. Plaintiff argues a severe impairment consisting of her depression is shown in the record by the fact that she has received treatment for that condition, which has been noted to be extreme to severe at times. But the mere existence of an impairment, even if it is described as extreme or severe – since plaintiff points to nothing in the record to indicate those terms were given the same meaning as they might be in a Social Security context – and the fact that one receives treatment therefore, alone are not sufficient to establish the existence of disability based on that impairment. <u>See</u> <u>Matthews v. Shalala</u>, 10 F.3d 678, 680

(9th Cir. 1993) (mere existence of impairment is insufficient proof of disability).

Plaintiff also points to a psychological evaluation completed by Christine M. Nicholson, Ph.D., in early January 2008. Tr. 10-17. In that report, Dr. Nicholson diagnosed plaintiff with anxiety and a bipolar disorder, finding her markedly impaired in a number of mental functional areas, and severely impaired in another. Tr. 11-12. As pointed out by plaintiff, however, this evidence was not made available to the ALJ, but was submitted for the first time to the Appeals Council. Plaintiff nevertheless argues Dr. Nicholson's report is properly before this Court as part of the record, citing to Ramirez v. Shahala, 8 F.3d 1149 (9th Cir. 1993), and Harmon v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000). Although it is questionable, as noted below, whether that report properly may form the basis for a remand for an award of benefits or for further administrative proceedings, the undersigned finds that, regardless, the evidence contained therein is neither material, nor does it call into question the ALJ's step two determination.

Defendant does not challenge plaintiff's assertion that pursuant to the Ninth Circuit's decision in Ramirez, the Court may consider new evidence submitted to the Appeals Council in determining whether the ALJ's decision is supported by substantial evidence.[3] 8 F.3d at1451-52; see also Harman, 211 F.3d at 1180 (citing to Ramirez to find that additional materials submitted to Appeals Council properly may be considered, because Appeals Council addressed them in context of denying claimant's request for review). Neither party, however, has addressed the issue of whether good cause is required to be shown before the Court may do so. Indeed, it seems the Ninth Circuit has yet to resolve that issue. See Mayes v. Massanari, 276 F.3d 453, 461 n.3 (9th Cir. 2001) (expressly holding it had not decided whether good cause is required to review evidence submitted for first time to Appeals Council, or whether it is required only when such evidence is submitted for first time to district court).

Defendant, however, has not argued that good cause is required here, and thus the undersigned will

---

[3]In Ramirez, the Ninth Circuit found specifically as follows:
Although the ALJ's decision became the Secretary's final ruling when the Appeals Council declined to review it, the government does not contend that the Appeals Council should not have considered the additional report submitted after the hearing, or that we should not consider it on appeal. Moreover, although the Appeals Council "declined to review" the decision of the ALJ, it reached this ruling after considering the case on its merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper and that the additional material failed to "provide a basis for changing the hearing decision." For these reasons, we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council.
Id.

proceed without imposing that requirement upon plaintiff in this case.[4]  The absence of this requirement

notwithstanding, Dr. Nicholson's report does not contain any evidence that would undermine the ALJ's

step two determination.  As just noted, Dr. Nicholson issued her report in early January 2008, nearly a full

year after the ALJ issued his decision.  That report, furthermore, merely addresses those impairments and

mental functional limitations Dr. Nicholson felt that plaintiff had at the time of the evaluation.  She gave

no opinion as to whether or not those impairments and limitations existed prior thereto, or to the date of

the ALJ's decision, or if they did, at what level of severity.

Accordingly, the undersigned finds that, while Dr. Nicholson's report may be reviewed pursuant to

Ramirez and Harman, the evidence contained therein is not material.  To be material, that evidence "must

bear 'directly and substantially on the matter in dispute.'"  Mays, 276 F.3d at 472 (citation omitted).  Also,

plaintiff must demonstrate a "reasonable possibility" the evidence "would have changed the outcome of

the administrative hearing."  Id. (citation omitted).  But to be entitled to child's disability insurance

benefits, plaintiff must prove she had a disability prior to the age of 22, which, in this case, would be by

June 22, 2003.  See 20 C.F.R. § 404.350(a); Tr. 27.  Since Dr. Nicholson's report does not concern that

time period, it fails to establish plaintiff's depression was severe during the relevant period at issue here.

Plaintiff argues Dr. Nicholson's report serves to confirm Dr. Dunn's statement in early July 2004,

that she had "severe" and "[r]efractory" depression. Tr. 228.  However, besides the fact that Dr. Dunn's

statement was made after the date plaintiff was required to establish the presence of a severe impairment,

there is no indication as to what Dr. Dunn meant by those terms, at least with respect to the presence, or

lack thereof, of significant work-related limitations stemming therefrom.  As discussed above, the mere

fact that a diagnosed impairment is described as being severe, for example, does not alone establish the

existence of such limitations for purposes of determining eligibility for Social Security benefits.  Nothing

in Dr. Dunn's report, for that matter, indicates that by describing plaintiff's depression as "severe", he was

---

[4]The undersigned does note, though, that were plaintiff to be required to demonstrate "good cause" in this case, she would not be able to do so.  To demonstrate "good cause," it must be shown that the new evidence "was unavailable earlier." Id. at 463. The good cause requirement will not be met, furthermore, by "merely obtaining a more favorable report once" the claimant's "claim has been denied." Id.  As noted above, Dr. Nicholson evaluated plaintiff and issued her report in early January 2008, nearly a year after the ALJ issued his decision.  Plaintiff, though, has not provided any reasons or explanation for why that report could not have been obtained and provided to the ALJ earlier.  In addition, given that Dr. Nicholson's report is much more favorable to plaintiff than any of the other medical evidence in the record concerning her alleged depression, that report also appears to be the kind of "favorable report" disfavored by the Ninth Circuit.

using the definition of that term employed in the Social Security regulations.

While the determination of eligibility for SSI benefits does not impose the same time requirement as does that for child's disability insurance benefits, the evidence contained in Dr. Nicholson's report still lacks materiality with respect to that determination as well. This is because at the time the ALJ issued his decision, as discussed above, the evidence he had before him in the record failed to show plaintiff had any significant work-related limitations caused by her alleged depression. Nor, also as discussed above, does Dr. Nicholson's report, and the findings contained therein, shed any light on the nature and severity of any depression-related symptoms and limitations that were present at the time. As such, the undersigned agrees with both the Appeals Council and defendant that since the information contained in that report was "about a later time" – i.e., early January 2008 – it did "not affect the [ALJ's] decision about whether" plaintiff was "disabled beginning on or before" the date of the ALJ's decision. Tr. 6.

Lastly, plaintiff argues the ALJ erred by failing to mention or discuss the opinions of Dr. Dunn and Peter Erickson, M.D., both of whom diagnosed her with "severe" depression. See Tr. 228, 240. However, as discussed above, other than plaintiff's depression being described as "severe" – which, as previously explained, is insufficient in itself to establish the existence of significant work-related limitations, let alone disability – Dr. Dunn noted no mental functional limitations. See Tr. 227-28. In regard to Dr. Erickson, he diagnosed plaintiff with severe, chronic depression, "even though" she stated she was "doing much better" on Zoloft. Tr. 240. In terms of mental health symptoms, Dr. Erickson stated:

> . . . The patient specifically denies bipolar symptoms lasting 2 days or more, although she notes occasionally she gets a strong pulse of energy trying to overcome the depression and will go for a number of hours cleaning the house and getting things done. She is never able to sustain this for even up to a day. The patient does note irritability and anger as being a big problem of her symptomatology, which certainly brings up the notion of bipolar but, again, it is not for a sustained period. She does note some distractibility and agitation with pacing but, again, nothing sustained. She is tolerating the Zoloft without any side effect.

Id. Indeed, upon evaluation by Dr. Erickson, plaintiff showed "no signs of pressured speech, flight of ideas or distractibility" or "psychomotor agitation or pacing,"and she had normal neurological findings and only "some mild depressed affect and psychomotor retardation." Id. Thus, while it may be that the ALJ did not mention Dr. Erickson's findings in his decision, they fail to demonstrate the existence of significant work-related limitations, and therefore do not constitute significant probative evidence. See Vincent, 739 F.3d at 1394-95 (ALJ must only explain why significant probative evidence has been

1    rejected).

2    II.    The ALJ's Assessment of Plaintiff's Credibility

3         Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d

4    639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749

5    F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is

6    based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a

7    claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as

8    long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148

9    (9th Cir. 2001).

10        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for

11   the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must

12   identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.;

13   Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is

14   malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

15   Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v.

16   Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

17        In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

18   evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

19   testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ

20   also may consider a claimant's work record and observations of physicians and other third parties

21   regarding the nature, onset, duration, and frequency of symptoms. Id.

22        The ALJ discounted plaintiff's credibility in part because "there were few objective findings in the

23   medical evidence of record" to support her alleged functional limitations. Tr. 30. A determination that a

24   claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing

25   requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff does not

26   challenge this basis for discounting her credibility. Indeed, as discussed above, the medical evidence in

27   the record is scant concerning plaintiff's allegations of severe depression and physical impairments

28   preventing her from being able to work. Certainly, such lack of objective medical support therefor calls

1  into question plaintiff's credibility.  As such, the ALJ did not err here.

2      The ALJ also discounted plaintiff's credibility in relevant part due to her "poor work history with

3  only brief work." Tr. 30.  This too is a valid reason for discounting plaintiff's credibility. See Thomas v.

4  Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found claimant's extremely poor work history

5  and lack of propensity to work in her lifetime negatively affected her credibility regarding her inability to

6  work).  Plaintiff argues this was not a valid basis for discounting her credibility, because she is alleging

7  disability since birth, has made multiple efforts at employment the Commissioner has determined to be

8  unsuccessful work attempts, and simply has been unable to sustain work activity on a regular basis.  But

9  the undersigned finds the evidence supports the ALJ's determination here.  Although it is true that plaintiff

10  has an alleged onset date of disability that is the same as her date of birth, that fact alone does not mean the

11  ALJ cannot still consider evidence in the record of a poor work history.

12      Indeed, while plaintiff claims she has made multiple efforts at employment, her own self-reports

13  concerning those efforts reveal she made only three attempts to do so over the period from 1995 to 2001,

14  with each such attempt being several years apart and lasting at most for three to four months. See Tr. 55,

15  63; see also Tr. 215.  Her work earnings report, furthermore, shows that the only years in which she earned

16  any money were 1997 and 2005, and that she earned less than $200 for the entire year each time. See Tr.

17  50.  Thus, despite plaintiff's hearing testimony that she had difficulties performing past jobs because of her

18  mental and/or physical impairments (see, e.g., Tr. 271-76), there is no evidence that plaintiff attempted to

19  engage in work for a significant, continuous period of time, and, therefore, the ALJ properly relied on her

20  poor work history to discount her credibility in part.[5]

21      Lastly, the ALJ discounted plaintiff's credibility because she had "recently earned her high school

22  equivalency (GED)," and had "attended college courses for an additional two years." Tr. 20.  The ALJ also

23  noted that "[a]lthough she had difficulties and did not obtain an Associate of Arts degree, she was able to

24  at least do simple tasks such as yard work." Id.  To determine whether plaintiff's symptom testimony is

25  credible, the ALJ may consider her daily activities. Smolen, 80 F.3d at 1284.  Such testimony may be

26  rejected if plaintiff "is able to spend a substantial part of . . . her day performing household chores or other

27

28      [5]Plaintiff also fails to point to any specific evidence in the record that the Commissioner actually determined her attempts
to work to be unsuccessful work attempts..

activities that are transferable to a work setting." Id. at 1284 n.7. She need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

With respect to the ALJ's emphasis on her obtaining a GED, plaintiff points out she only attended high school through the eighth grade, and was in special education due to a learning disability. In addition, plaintiff notes it took her two to three years to complete her GED, and, again, that she had difficulties with finishing her Associates of Arts degree, and was unable to do so. Given this evidence, plaintiff asserts, the ALJ offered no basis for finding these educational efforts undercut her credibility. But plaintiff misses the point here. The very fact that she was able to complete her GED – even if after two or three years – alone is indicative of an ability to perform high school level work. That is, obtaining such a degree is evidence of this level of skills and abilities, and the undersigned finds the ALJ did not err in determining that ability to be indicative of an ability to perform at least simple tasks.[6] Therefore, the ALJ did not err in assessing plaintiff's credibility in this case.

III.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains a written statement and testimony from plaintiff's boyfriend, Curt McClure,

_____

[6]Plaintiff further argues the vocational expert testified at the hearing that an individual with the same education as plaintiff, would impede the ability to sustain sedentary unskilled employment. See Tr. 302. But the vocational expert went on to testify that such would not be the case for an individual who is only limited to performing light work. See Tr. 303-04. Given that, as discussed above, the medical evidence in the record supports the ALJ's determination that plaintiff had no severe physical impairments, the undersigned does not find the vocational expert's testimony here a valid basis for challenging the ALJ's overall decision to discount plaintiff's credibility for the reasons discussed above.

who gave his observations concerning plaintiff's mental and physical impairments and limitations. See Tr. 82-90, 293-301. With respect to that lay witness evidence, the ALJ stated:

> The lay witness testimony of the claimant's boyfriend, Curt McClure, and his statement dated December 10, 2003, were not fully credible as to the claimant's functional limitations (Exhibit 4E). He testified that he observed the claimant have a fainting spell four times. She fell and was unconscious for about a minute. Mr. McClure also noted that the claimant had difficulty following instructions. . . .

Tr. 30. In rejecting this testimony, the ALJ went on, as noted above, to find as follows:

> . . . Interestingly, the claimant testified that she recently earned her high school equivalency (GED) and that she attended college courses for an additional two years. Although she had difficulties and did not obtain an Associate of Arts degree, she was able to at least do simple tasks such as yard work.

Id. Plaintiff argues these are not valid reasons for rejecting the lay witness evidence offered by plaintiff's boyfriend. The undersigned agrees.

It is true as defendant argues, that an ALJ may reject lay witness evidence if other evidence in the record regarding the claimant's activities is inconsistent therewith. See Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (ALJ's rejection of lay witness evidence because it was inconsistent with claimant's successful completion of continuous full-time coursework constituted reason germane to claimant). The ALJ, however, only noted evidence in the record that was inconsistent with Mr. McClure's observations concerning plaintiff's ability to follow all instructions. The ALJ did not provide any reasons for rejecting Mr. McClure's statements regarding the other mental and physical impairments and limitations he observed, such as her difficulties in completing tasks, remembering, performing certain physical activities, and communicating. See Tr. 82-90, 293-301. This was error.

Defendant argues the ALJ's assessment of plaintiff's residual functional capacity appropriately accounted for all of Mr. McClure's reliable observations. For example, defendant notes the ALJ limited plaintiff to not working around hazards such as heights or machinery. It is not clear, however, that such a limitation would adequately accommodate plaintiff's impairments and limitations, were her boyfriend's statements concerning her fainting spells wholly adopted. Nor would a restriction to simple, repetitive work necessarily – or even likely – account for the problems Mr. McClure observed plaintiff having with completing tasks, remembering, communicating, or performing physical activities. Accordingly, for all the above reasons, the undersigned finds the ALJ erred here.

IV.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ assessed plaintiff with the residual functional capacity to do "simple, repetitive unskilled work requiring no more than three step instructions," and no "work at heights or around moving machinery." Tr. 29.  Plaintiff argues this RFC assessment was erroneous, because the medical evidence from Dr. Borrone – specifically, the limitation to lifting no more than five to ten pounds – results in an ability to perform sedentary work at the most.  As discussed above, however, the ALJ did not err in discounting the medical evidence provided by Dr. Borrone in particular, and in finding plaintiff had no severe physical impairments in general.

Plaintiff further argues, though, that although the ALJ appeared to rely in part on the findings and opinions of two non-examining, consulting physicians, Anita Peterson, Ph.D., and Bruce Eather, Ph.D., in finding her capable of performing simple, repetitive unskilled work (see Tr. 30), the ALJ did not properly assess all of the mental functional limitations they found.  The undersigned agrees.  Dr. Peterson completed a state agency form in early February 2004, in which she checked boxes indicating plaintiff was moderately limited her ability to: complete a normal workday and workweek; perform at a consistent pace; interact appropriately with the general public; respond appropriately to changes in the work setting; and set

realistic goals or make plans independently of others. Tr. 143-45. In a narrative portion of that form, Dr.

Peterson further found plaintiff "able to understand, remember and follow simple instructions," "accept

instructions from supervisors and cooperate with co-workers" and "adapt to routine changes in simple

tasks." Tr. 145-46. Dr. Peterson's findings were affirmed by Dr. Eather in early August 2004. Tr. 146.

Defendant argues the ALJ did not err here, because the opinion of a non-examining physician does

not constitute substantial evidence, unless it is supported by other independent evidence in the record. But

be that as it may, the findings and opinions of Dr. Peterson and Dr. Eather constitute significant probative

evidence the ALJ was required to address. He did not do so in this case. Thus, while it may turn out to be

that their findings and opinions ultimately are not supported by other independent evidence in the record,

the ALJ first must provide a proper analysis thereof, which was not done. Defendant next cites to <u>Stubbs-

Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008), for the proposition that the narrative portion of

the state agency form discussed above is preferred to the "check-box" portion of that form.

But this is not what the Ninth Circuit held in <u>Stubbs-Danielson</u>. Rather, the Court of Appeals in

that case simply found that the ALJ had translated the specific mental functional limitations found by one

of the medical sources in the record – including problems with pace – "into the only concrete restrictions

available to him," the medical source's ultimate conclusion that the claimant was restricted to simple tasks.

<u>Id.</u> at 1173-74. While the Ninth Circuit in <u>Stubbs-Danielson</u> did appear to find the more specific mental

functional limitations were properly subsumed within that "ultimate conclusion," there is no indication in

that decision that the narrative portion should always take precedence over the "check-box" portion of the

form at issue, regardless of the facts of the particular case.

Indeed, unlike in <u>Stubbs-Danielson</u>, it is not at all clear in this case that all of the mental functional

limitations found by Dr. Peterson and Dr. Eather – such as completing a normal workday or workweek,

interacting appropriately with the general public or setting realistic goals – should be treated as having

been subsumed within their determination that plaintiff was capable of performing simple tasks, or that the

ALJ actually considered the other moderate mental functional limitations in also limiting plaintiff to

performing such tasks, and "translated" them into that restriction. That is, simply put, it is not clear the

ALJ properly considered their entire report and findings contained therein. Remand, therefore, is

appropriate for further consideration of plaintiff's assessed RFC based on the medical evidence provided

1  by Drs. Peterson and Eather.  Such remand also is appropriate in light of the ALJ's errors in evaluating the

2  lay witness evidence in the record discussed above.

3  V.     The ALJ's Step Five Analysis

4         If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

5  process the ALJ must show there are a significant number of jobs in the national economy the claimant is

6  able to do.  Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), §

7  416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the

8  Commissioner's Medical-Vocational Guidelines. Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240

9  F.3d 1157, 1162 (9th Cir. 2000).

10        An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

11  posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

12  1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

13  medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

14  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported

15  by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from

16  that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th

17  Cir. 2001).

18        At the hearing, the ALJ posed a hypothetical question to the vocational expert, which contained

19  substantially the same limitations included in the assessment of plaintiff's residual functional capacity,

20  with an additional limitation to performing at the light exertional level.  See Tr. 302-03.  In response to that

21  hypothetical question, the vocational expert testified that an individual with those limitations, and the same

22  age, education and work background as plaintiff, would be able to perform other jobs. Tr. 303-04.  Based

23  on the vocational expert's testimony, the ALJ found plaintiff capable of performing other jobs existing in

24  significant numbers in the national economy. Tr. 31.

25        Plaintiff points out that when certain, more restrictive limitations were added to that hypothetical

26  question  – i.e., restrictions to sedentary work, sporadic public contact and an inability to follow through

27  on even simple instructions – the vocational expert testified that substantial gainful employment would be

28  eliminated. See tr. 302, 305.  Plaintiff notes as well that the ALJ himself stated at the hearing that a serious

limitation in the ability to complete a workday or workweek and perform at a consistent pace would result in an inability to maintain competitive work. Tr. 306. It is not at all clear, however, that these limitations, as posed to the vocational expert at the hearing,[7] are supported by the substantial evidence in the record as discussed above.

Nor can the ALJ be said to have erred at step five of the sequential disability evaluation process in light of plaintiff's testimony, given that, also as discussed above, her credibility properly was discounted. On the other hand, because the ALJ, again as discussed above, erred in evaluating the findings provided by Dr. Peterson and Dr. Eather and in evaluating the lay witness evidence in the record, it is not clear that the hypothetical question the ALJ posed to the vocational expert, and relied upon to find plaintiff capable of being able to perform other jobs existing in significant numbers in the national economy, contained all of plaintiff's mental functional limitations. As such, remand for further proceedings to reconsider this issue is warranted as well.

VI.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the medical evidence in the record regarding plaintiff's mental functional

---

[7]For example, the vocational expert testified that a limitation to unskilled, repetitive, sedentary work consisting of no more than three steps, and "not working with the public except on a very sporadic basis" would preclude employment. Tr. 302.

limitations, the lay witness evidence, plaintiff's residual functional capacity, and her ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 19, 2009**, as noted in the caption.

DATED this 28th day of May, 2009.

Karen L. Strombom
United States Magistrate Judge